

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL 27 2016
CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BOBBY JOE LEE, §
§
Petitioner, §
§
v. § No. 4:14-CV-928-A
§
LORIE DAVIS, Director,[1] §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
§
Respondent. §

MEMORANDUM OPINION
and
ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Bobby Joe Lee, a state prisoner incarcerated in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, Director of TDCJ, Respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

I. Procedural History

On September 2, 2010, in the 432nd District Court of Tarrant County, Texas, Case Nos. 1181069D, 1181071D and 1181073D, a jury

---

[1]Effective May 4, 2016, Lorie Davis replaced William Stephens as director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Pursuant to Federal Rule of Civil Procedure 25(d), Davis is automatically substituted as the party of record.

found Petitioner guilty on two counts of felony theft and one

count of felony criminal mischief. Clerk's R. 67, ECF No. 24-9;

Clerk's R. 68, ECF No. 24-22; Clerk's R. 68, ECF No. 25-2. The

Amarillo Court of Appeals affirmed the trial court's judgments,

as modified to correctly reflect petitioner's pleas to the

sentencing-enhancement paragraphs in the indictments, and the

Texas Court of Criminal Appeals refused his petition for

discretionary review. Mem. Op. 13, ECF No. 24-4; "Case Info

Sheet," ECF No. 24-1. Petitioner also filed three postconviction

state habeas applications, one for each conviction, which were

denied by the Texas Court of Criminal Appeals on the findings of

the trial court. Action Taken, ECF Nos. 25-10, 25-15 & 25-16.

These three consolidated federal petitions for habeas relief

followed.

The Amarillo Court of Appeals summarized the facts of the

case as follows:

> In January 2010, three indictments were returned
> against Appellant. In Cause No. 1181069D, Count One of
> the indictment alleged that, on or about November 18,
> 2009, Appellant unlawfully appropriated by acquiring or
> otherwise exercised control over property, to-wit:
> money and an automated teller machine, valued at
> $20,000 or more, but less than $100,000, with intent to
> deprive the owner, Joe Martinez, of the property. In
> Count Two, the indictment alleged that, on the same
> date, Appellant intentionally, with the specific intent
> to commit the offense of theft of property valued at

2

$20,000 to $100,000, performed an act, to-wit: pull or push an automated teller machine from its base with the use of a Caterpillar tractor/wheel loader, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

In Cause No. 1181071D, Count One of the indictment alleged that, on or about November 18, 2009, Appellant unlawfully appropriated, by acquiring or otherwise exercising control over property, to-wit: a Caterpillar tractor/wheel loader with a value of $20,000 or more, but less than $100,000, with intent to deprive its owner, Russell Cobbs, of the property. In Count Two, the indictment alleged that, on the same date, Appellant intentionally operated a motor-propelled vehicle, to-wit: a Caterpillar tractor/wheel loader, knowing that he did not have the effective consent of its owner, Russell Cobbs.

The indictment in Cause No. 1181073D alleged that, on or about November 18, 2009, Appellant intentionally or knowingly damaged or destroyed tangible property, to-wit: bank property and an automated teller machine, by pulling or pushing an automated teller machine from its base attached to bank property with the use of a Caterpillar tractor/wheel loader, without the effective consent of its owner, Joe Martinez, and caused a pecuniary loss of $100,000 or more, but less than $200,000 to Martinez.

In August 2010, a trial on the merits was held. Officer Kaare Martin of the Fort Worth Police Department testified that, on November 18, 2009 at 4:37 a.m., he responded to a commercial hold-up alarm at the OmniAmerican Bank. As he approached the bank, he saw a front-end loader being driven up the street adjacent to the bank. He then observed a black male wearing a tan jacket jump from the cab of the front-end loader. The man then ran toward the bank's drive-thru where two other men were standing approximately four feet from an ATM that had been removed from its base and was sitting in the middle lane of the drive-thru. One man was

3

wearing a black jacket and camouflage pants. The other man was wearing black clothing. Both men had masks on their faces.

As the man who jumped from the front-end loader approached the two men at the ATM, they started running in the same direction. Officer Martin followed the three men until they split up in a parking lot and then followed the man wearing the black jacket and camouflage pants. The man ran through the parking lot and jumped a stockade fence into the backyard of a residence. Officer Martin left his patrol car and, approximately thirty seconds later, spotted a man crouching underneath a tree in the side yard of the residence. He believed the man was attempting to conceal himself. Officer Martin feigned a move as if he were going around to the other side of the residence. As he did so, he could see the shadow of the crouching man move toward him. Officer Martin then returned to his original position, pulled his gun and ordered the man to lie on the ground. The man was wearing a black jacket and camouflage pants. Around the man's neck was a pair of shorts and he had a pair of gloves. Officer Martin testified that he had observed the man earlier using the pair of shorts as a mask and identified Appellant as one of the men who was standing near the ATM. He also identified Darius Jackson as the man who jumped from the cab of the front-end loader wearing a tan jacket.

Officer Martin further testified that on the night in question he also observed a GMC pickup less than a block from the bank. Its engine was running and the steering column had been broken allowing the ignition switch to be bypassed. Based on these observations, he believed the pickup was involved in the commission of the offense.

Officer Christopher Britt testified that, when he arrived at the bank, the front-end loader was parked in the street. After observing that Officer Martin had handcuffed Appellant, he discovered a Chevrolet Tahoe SUV parked nearby on the wrong side of the street in

4

front of a vacant house. The ignition had been punched
out, there were no keys, and the vehicle appeared to
have been stolen. He searched the vacant house but
found no one.

Russell Cobbs, project superintendent for Texas
Sterling Construction Company, testified that, on the
morning of November 18, he discovered his Caterpillar
front-end loader was missing from the equipment yard
located near the bank. Two gates that were usually
chained together were flung open and the padlock
holding the chains together had been cut. He later
identified the front-end loader missing from the
equipment yard as the front-end loader found at the
bank. Without objection, he estimated the value of the
front-end loader to be between $90,000 and $100,000.

Angel Grizzle, Director of Administrative Services
and Corporate Security for the bank, arrived at the
bank and observed that the drive-thru canopy was nearly
completely down and the ATM had been removed from its
base. Without any objection, she testified that its
purchase price was approximately $60,000, but also
testified the total amount of money in the ATM at the
time of the incident was $59,380. On cross-examination,
she agreed with Appellant's counsel that the value of
the ATM was less than $20,000 if you accounted for its
depreciation taken during the time the bank owned it.

Detective Ed Van Meter testified that, at least
two persons were involved in the incident, Jackson and
Appellant. He testified that the awning of the drive-
thru and ATM were heavily damaged. Without objection,
he estimated the ATM's value including its cash was
more than $20,000 but less than $100,000 and, based on
an estimate from a construction company given to him by
the bank, he estimated the cost of repairing the drive-
thru was approximately $116,000. On cross-examination,
he testified that his original estimation of the cost
of repairing the drive-thru was much higher than the
information subsequently presented to him by the
prosecutor during trial. He testified that he now
believed the cost of repairing the drive-thru was $90,000.

5

Detective Van Meter also testified he believed there were two vehicles involved in the theft—the GMC pickup and the Chevrolet Tahoe SUV. He testified that both vehicles had broken steering columns and contained tools commonly used for theft and burglary. He also testified the Tahoe contained Caterpillar keys, heavy-duty bolt cutters and a picture of Jackson. He later determined the Tahoe was registered to Jackson's brother. Both Jackson and Appellant lived in Dallas.

At the trial's conclusion, the jury convicted Appellant of theft of property valued at $20,000 or more but less than $100,000 as alleged in Causes Nos. 1181069D and 1181071D. The jury also convicted Appellant of criminal mischief, a third degree felony, i.e., criminal mischief involving property valued at $20,000 or more but less than $100,000, a lesser-included offense to the offense criminal mischief, a second degree felony, as alleged in Cause No. 1181073D. At the punishment phase of trial, the Appellant plead "true" to the enhancement allegations contained in each indictment. The jury assessed Appellant's sentence at fifty years in each case . . . .

Mem. Op. 2-7, ECF No. 24-4 (footnotes omitted).

## II. Issues

Petitioner's grounds for habeas relief are multifarious and addressed as thoroughly as practicable. Generally, he claims—

(1)  There is no evidence to support the convictions;

(2)  The trial court erred by applying the law of parties to his cases;

(3)  The trial court abused its discretion by denying his motion for a direct verdict;

(4)  The court of appeals erred by "upholding not addressing trial court's denial of" his motion for a directed verdict;

6

    (5)    The trial court gave invalid jury instructions over defense counsel's objections;

    (6)    The trial court erred by allowing the state to make improper statements to the jury and to withhold evidence;

    (7)    The trial court erred by answering a jury note without him or his counsel being present and not reading note one and his answer in open court so it would be a part of the record;

    (8)    He received ineffective assistance of trial counsel; and

    (9)    He received ineffective assistance of appellate counsel.

Pets. 6-9, ECF Nos. 1,[2] 62 & 65.

### III. Rule 5 Statement

Respondent believes that petitioner has sufficiently exhausted his state court remedies as to the grounds raised and that the petition is neither untimely under the federal statute of limitations or a successive petition. Resp't's Answer 6, ECF No. 22; 28 U.S.C. § 2244(b), (d).

---

[2]The pagination in the ECF header is used when citing to this 35-page document.

## IV. Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established Supreme Court precedent or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S.

8

362, 399 (2000). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, as in this case, it is an adjudication on the merits, which is entitled to the presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain*, 372 U.S. 293, 314 (1963)[3]; *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

In this case, the state habeas court entered express findings of fact as to one or more of petitioner's claims, which he has failed to rebut with clear and convincing evidence, and the Texas Court of Criminal Appeals adopted those findings. Under these circumstances, a federal court must defer to the state courts' factual findings and may assume the Texas Court of Criminal Appeals applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was

---

[3]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

applied. *Townsend v. Sain,* 372 U.S. 293, 314 (1963)[4]; *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997). With these principles in mind, the court addresses petitioner's claims.

### (1) No Evidence and (3) and (4) Trial and Appellate Court Error

Under his first ground, petitioner claims his constitutional rights were violated because there was no evidence, other than his mere presence at the scene, to support his convictions in the form of a video recording, witness testimony, fingerprints, DNA, or other forensic evidence connecting him to the crimes. As such, he asserts under his third and fourth grounds that the trial court abused its discretion by denying his motion for a directed verdict and the appellate court erred in upholding the trial court's denial on appeal. Pets. 6-7, ECF Nos. 1, 62 & 65; Pet. 15-16, 19, ECF No. 1.

A claim that "no evidence" supports a conviction is the same as a challenge to the legal sufficiency of the evidence. *Haley v. Cockrell,* 306 F.3d 257, 266-67 (5th Cir. 2002), *vacated on other grounds,* 541 U.S. 386 (2004); *United States v. Jackson,* 86 Fed.

---

[4]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver,* 645 F.3d 327, 330 n.2 (5th Cir. 1981).

App'x 722, 722 (5th Cir. 2004). Likewise, a claim that a trial court erred in failing to grant a motion for a directed verdict is merely another way of alleging that the evidence is insufficient to support the verdict. *Gatrell v. Lynaugh,* 833 F.2d 527 (5th Cir. 1987). Therefore, petitioner's first and third grounds for relief are addressed together as a claim that the evidence is legally insufficient to support his convictions. Such claims are reviewed under the legal-sufficiency standard set out in *Jackson v. Virginia,* 443 U.S. 307 (1979). Under this standard, a court views all the evidence in the light most favorable to the prosecution in determining whether any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt. *Id.* at 318-19. Direct and circumstantial evidence adduced at trial, as well as all inferences reasonably drawn from it, is viewed in the light most favorable to the verdict. *United States v. Sanchez,* 961 F.2d 1169, 1173 (5th Cir. 1992). The jury is the final arbiter of the weight of the evidence and of the credibility of witnesses and is tasked with resolving any conflicts or inconsistencies in the evidence. *United States v. Barksdale-Contreras,* 972 F.2d 111, 114 (5th Cir. 1992). The jury is presumed to have resolved any such conflicts or

11

inconsistencies in the evidence in favor of the verdict rendered. *United States v. Franklin,* 321 F.3d 1231, 1239-40 (9th Cir.), *cert. denied,* 540 U.S. 858 (2003).

Petitioner was convicted of two counts of third-degree felony theft of property valued at $20,000 or more but less than $100,000 and one count of the lesser-included offense of third-degree felony criminal mischief involving property valued at $20,000 or more but less than $100,000. Applying the *Jackson* standard and relevant state law, the state appellate court addressed the issue as follows:

DISCUSSION

Appellant asserts the evidence is insufficient because he was at the wrong place at the wrong time, i.e., a location close to where a fleeing suspect had last been seen. He also asserts Officer Martin was confused by the similarity in the clothes of the various suspects fleeing the scene and there was no evidence at trial of monetary damages related to the various offenses for which he was convicted.

SUFFICIENCY OF THE EVIDENCE STANDARD OF REVIEW

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia.* Under that standard, in assessing the sufficiency of the evidence to support a criminal conviction, this Court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, any

12

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

Further, the trier of fact is the sole judge of the weight of the evidence and credibility of the witnesses, and we may not re-evaluate the weight and credibility determinations made by the fact-finder. Thus, we resolve any inconsistencies in the evidence in favor of the verdict.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. The State is not required to present direct evidence to establish guilt. Indeed, circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt. Furthermore, the law does not require that each fact "point directly and independently to the guilt of the appellant, so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." In addition, when conducting a legal sufficiency review, we consider all evidence that was admitted, including evidence that might have been inadmissible if a proper objection had been made.

THEFT

A person commits the offense of theft if he unlawfully appropriates property with the intent to deprive the owner of that property. Intent to deprive may be determined from the acts of the accused, and it must be remembered that the element which must be proven is not deprivation, but the accused's [sic] "intent to deprive" at the time of the taking. If the value of the property stolen is $20,000 or more but less than $100,000, the offense is a third degree felony.

13

CRIMINAL MISCHIEF

A person commits criminal mischief if, without the effective consent of the owner, he intentionally or knowingly damages or destroys the tangible property of the owner. If the value of the property damaged or destroyed is $20,000 or more but less than $100,000, the offense is a third degree felony.

LAW OF PARTIES

The Texas Penal Code provides that "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." A person is criminally responsible for the offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he or she solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. When determining whether one participated as a party, we may look to events occurring before, during, and after the commission of the offense and rely on actions of the defendant that show an understanding and common design to do the prohibited act.

ANALYSIS

The evidence at trial showed that, at approximately 4:30 a.m., moments after an alarm went off, a person wearing a mask, a black jacket, and camouflage pants was seen standing four feet from an ATM that had been forcibly removed from its base by a stolen front-end loader. When approached by a police officer, that person fled from the bank in the same direction as the driver of the front-end loader and the other person standing near the ATM. He ran through a parking lot and jumped a stockade fence into a residential backyard. Approximately thirty seconds later, he was observed by Officer Martin crouched beneath a tree, apparently attempting to avoid detection. And, when he believed Officer Martin was circling the residence in the opposite direction, he

14

attempted to escape but was caught. That man was identified by Officer Martin as Appellant.

At the time of his arrest, Appellant was wearing a black jacket and camouflage pants. He had a pair of shorts around his neck and a pair of gloves. The presence of the shorts, presumably being used as a mask, and the gloves, to avoid leaving fingerprints, is indicative that, prior to his arrival at the bank, Appellant had formed the intent to deprive the owner of the ATM and/or its contents. Because he was assisting in the ATM's theft with other persons, a rational juror could infer that he was acquainted with Darius Jackson, the driver of the front-end loader. Because the front-end loader was appropriated from its owner prior to the incident at the bank and was necessary to move the ATM, a rational juror could also infer that Appellant was part of a plan to steal the front-end loader and then remove the ATM from its base in order to steal the ATM and/or its contents. That he fled at the same moment and in the same direction as Jackson and the other person standing beside the ATM supports the inference that he was a part of the group involved in illegal activity. In the process of carrying out this crime, the ATM and drive-thru were heavily damaged. In sum, the evidence established Appellant not only participated in removing the ATM from its base while damaging the ATM and drive-thru in the process, but also the theft was part of a common design with at least one other person to steal the front-end loader and then use that vehicle to steal money from the ATM.

Regarding property valuations, Cobbs testified that a new front-end loader would cost him $120,000 and the value of the front-end loader that was stolen was $90,000 to $100,000. Although Grizzle agreed with Appellant's counsel on cross-examination that the value of the ATM, considering its depreciation for accounting purposes, was less than $20,000, her direct testimony was that the ATM was purchased for $60,000 and the total amount of money in the ATM at the time of the incident was $59,380. Although Detective Van Meter originally testified on direct examination that the

15

original estimated cost of repairing the bank's drive-thru was $116,000, he testified during cross-examination that new information led him to believe that the cost of repair was $90,000. These three witnesses supplied evidence, without objection, that the cost of the front-end loader, the value of ATM and/or its contents, and the repair cost of the drive-thru was, in each case, more than $20,000 but less than $100,000.

Accordingly, based upon an interpretation of this evidence in a light most favorable to the verdict and the reasonable inferences to be drawn therefrom, a rational juror could have found that the State proved the elements of theft and criminal mischief, involving property valued at more than $20,000 but less than $100,000, beyond a reasonable doubt.

Mem. Op. 7-12, ECF No. 24-4 (citations omitted).

A federal court reviews the state court's application of *Jackson* under the deferential standard of § 2254(d). *McDaniel v. Brown,* 558 U.S. 120, 132-33 (2010). Applying the appropriate deference, the state court's application of *Jackson* is not "objectively unreasonable." Petitioner is not entitled to relief under his first, third or fourth grounds.

### *(2) Law of Parties, (5) Invalid Jury Instructions, (6) Prosecutorial Misconduct, and (7) Jury Note*

Under his second and fifth grounds, petitioner claims his constitutional rights were violated by the trial court's application of the law of parties to his case, over defense

16

counsel's objection, and the court's invalid jury instructions.[5]
Pets. 6, 8, ECF Nos. 1, 62 & 65; Pet. 15, 21-22, ECF No. 1. Under
his sixth ground, petitioner claims, in part, that his
constitutional rights were violated by the state's use of
"suggestive identification," improper jury argument, perjured
testimony regarding the misplaced gloves, and the prosecutor's
personal writing (a large diagram). Pet. 23-24, ECF No. 1.
Finally, under his seventh ground, petitioner claims the trial
court violated article 36.27 of the Texas Code of Criminal
Procedure when the judge read and answered a jury note without
petitioner and his trial counsel present. Pet. 29, ECF No. 1.

In addressing these claims, the state habeas court found
that the claims were not cognizable in a habeas proceeding
because they could have been raised on direct appeal but were
not. Adm. R., WR-32,427-05, 287-89, 291-92 & 298-99, ECF No. 25-
14. In general, federal courts may not review a state court
decision that rests on an adequate and independent state
procedural default unless the habeas petitioner can establish
either "cause" for the default and "prejudice attributable
thereto" or demonstrates that the failure to consider the federal

---

[5]It appears that the state habeas court treated Petitioner's fifth
ground as an improper jury *argument* claim. Adm. R., WR-32,427-05, 291-92, ECF
No. 25-14. That fact has no effect on this court's disposition of the claim.

claims will result in a "fundamental miscarriage of justice." *Harris v. Reed,* 489 U.S. 255, 262 (1989). To satisfy the independent and adequate requirements, the dismissal of a claim must "clearly and expressly" indicate that it rests on state grounds which bar relief, *and* the bar must be strictly and regularly followed by state courts and applied to the majority of similar claims. *Finley v. Johnson,* 243 F.3d 215, 218 (5th Cir.2001) (citing *Amos v. Scott,* 61 F.3d 333, 338–39 (5th Cir. 1995)).

The Fifth Circuit has held that a claim is procedurally defaulted if the state habeas court explicitly found that the claim could have, but was not, raised on direct appeal, unless one of the exceptions has been met. *Brewer v. Quarterman,* 466 F.3d 344, 347 (5th Cir. 2006). Therefore, these claims are procedurally defaulted unless petitioner can meet one of the exceptions. Toward that end, he claims the cause for the default was his appellate counsel's failure to the raise the issues on appeal. Pet'r's Resp. 4, 6, ECF No. 36. Although ineffective assistance of appellate counsel can constitute "cause" for a procedural default, petitioner has failed to identify a meritorious claim that he was denied effective assistance of appellate counsel, *see infra.* Petitioner is not entitled to

18

relief under his second, fifth and seventh grounds and his sixth

ground, in part, as the claims therein are procedurally

defaulted.

### (6) Prosecutorial Misconduct

Under his sixth ground, petitioner also claims the state

withheld exculpatory evidence in the form of 58 photos taken by

the crime scene investigator, the gloves he supposedly wore on

the night in question, and DNA evidence of the individual who was

wearing the gloves. The state habeas court entered the following

findings of fact relevant to this claim:

1. The Tarrant County Criminal District Attorney's
   Office maintains an open file policy through the
   Tarrant County Electronic Case Filing System
   (ECFS).

2. The online records indicate that the complete
   photographic file containing all fifty-eight
   photographs was added on July 30, 2010.

3. The ATM camera stills were provided to defense
   counsel . . . on March 1, 2010.

                  . . .

5. The camera still photographs and the portion of
   the actual videotaped surveillance which had not
   been damaged by the front loader were admitted
   into evidence during the applicant's trial.

6. The defense was aware at trial that the lap gloves
   had been misplaced.

7. The State discharged its duty to disclose
   exculpatory evidence to the defense prior to

trial, and did not withhold evidence from the defense.

Adm. R., WR-32,427-05, 293-94 (record citations omitted).

Based on its findings, and applying state law citing *Brady v. Maryland*, 373 U.S. 83 (1963), the state court entered the following legal conclusions:

1.  The State has an affirmative duty to disclose evidence favorable to the defendant.

2.  To prove that the State has failed to disclose evidence favorable to the applicant, the applicant must meet a three-prong test.

3.  The applicant must show that (1) the State, including all members of law enforcement involved in the investigation, failed to disclose evidence, regardless of good or bad faith; (2) the evidence is favorable to the applicant; and (3) the evidence is material and that there is a reasonable probability that, had the evidence been disclosed, the outcome of the trial would have been different.

4.  An open file policy satisfied the State's duty to disclose exculpatory evidence.

5.  The State discharged its duty to disclose exculpatory evidence to the defense prior to trial, and did not withhold evidence from the defense.

*Id.* at 294-95 (citations omitted).

In the absence of clear and convincing evidence of a violation of the state's open file policy, this court defers to the state courts' factual findings. Applying the appropriate

deference, the state court's adjudication of the claim is not contrary to or an unreasonable application of clearly established Supreme Court precedent. 28 U.S. § 2254(d)(1). The Supreme Court has never held that the Constitution demands an open file policy. *Kyles v. Whitley,* 514 U.S. 419, 436-37 (1995). However, where the state asserts it has complied with *Brady* through its open file policy, the Court has held that the defense may reasonably rely on the open file to contain all relevant exculpatory materials the state is obligated to disclose. *Strickler v. Greene,* 527 U.S. 263, 283 n.23 (1999). Petitioner is not entitled to relief under his seventh ground.

### *(8) and (9) Ineffective Assistance of Counsel*

Petitioner claims he received ineffective assistance of counsel at trial and on appeal. Pet. 31-34, ECF No. 1. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the

21

*Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state court record. *Harrington*, 131 S. Ct. at 785 (quoting *Williams v. Taylor*, 529 U.S. at 410)); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Petitioner presents a laundry list of ineffective-assistance claims against trial counsel. Specifically, Petitioner alleges

22

trial counsel was ineffective by failing—

    (1)  to object to the racially biased selection of the jurors;

    (2)  to object to the false testimony of officer Kaare Martin;

    (3)  to object to the "suggestive identification by the (A.D.A.) Mr. Rodgers to officers Britt, Kaare Martin, F. Myers, and Det. Ed Van Meter";

    (4)  to object to the "radio-transmission not being authenticated";

    (5)  to object to the "officers who tainted, tampering with, and fabericating [sic] physical evidence";

    (6)  to "subpoena the officer who tainted, tampering with and fabericating [sic] physical evidence";

    (7)  to "file a motion for a new trial or mistrial when the court admitted the prosecutor's personal 'legal writing pad' as evidence and to be use [sic] by the jury in their deliberations in the guilt and innocence phase";

    (8)  to "ask for a new trial or a mistrial when he found out the 'fifty plus photos' were missing and not admitted into evidence";

    (9)  to "ask for a new trial or a mistrial when he found out the gloves and shorts that was evidence were missing";

    (10) to conduct an independent investigation;

    (11) to call character witnesses "D. Randle and Clyde Lee of Dallas, Texas"; and

    (12) to object to the "perjury testimony of Detective Ed Van Meter, when he testified that the defendant (Bobby Lee) and Darius Jackson both lived in

> Dallas," when the prosecutors and trial counsel
> knew Darius Jackson was from Hutchin, Texas, and
> Bobby Lee was from Dallas.

Supp. Pet. 2-3, ECF No. 19.

The state habeas court conducted a hearing via affidavit,

and trial counsel responded to petitioner's allegations as

follows:

### General Background

> On December 2, 2009, I was appointed by the trial
> court to represent Mr. Lee in his then pending three
> felony criminal charges (Theft $20K - $100K, Theft $20
> - $100K, and Criminal Mischief $100K - $200K). As part
> of my representation of Mr. Lee I thoroughly reviewed
> his case file (containing police reports and witness
> statements) which was obtained from the District
> Attorney's office, allowed Mr. Lee to review his entire
> case file, extensively discussed the allegations and
> all possible defensive strategies with Mr. Lee,
> answered all of his questions, researched all legally
> relevant issues, effectively explained to him his right
> to a jury trial, clearly explained to him the possible
> punishment range, and effectively explained to him the
> pros and cons of going to trial. In addition to
> personally visiting with Mr. Lee about his case on at
> least seven court settings prior to his trial, I also
> visited with Mr. Lee four times in the county jail
> (each visit lasting well over an hour). Well prior to
> the beginning of Mr. Lee's trial both he and I were
> intimately familiar with all evidence (exhibits and
> testimony) admitted and/or presented at trial.

> Mr. Lee now alleges ineffective assistance of
> counsel. Accordingly, responses to those allegations
> are provided below:

> **Response to Allegation 7:** Code of Criminal Procedure
> Violation of Article 36.27.

24

Mr. Lee essentially argues that there was a
violation of Article 36.27 because the Court allegedly
failed to allow Mr. Lee and myself the opportunity to
respond to Jury Note number 1. I cannot specifically
recall whether or not the Petitioner was in the court
room when the discussion regarding jury note number one
was had but I do recall having a conversation with the
Petitioner informing him of the note and my thoughts
regarding it. I simply agreed to provide the jury with
all admitted evidence and as noted in Petitioner's
Exhibit C inform the jury that the Court could only
provide disputed testimony. There were no legally
appropriate objections to be made therefore, I made
none. It is my general practice to insist upon the
defendant's presence whenever a response to a jury note
is discussed and/or decided upon. However, because any
discussion and/or rulings on this issue are apparently
absent from the trial transcript it is possible that
the Petitioner was not present but I doubt it. At this
point I simply do not specifically recall.

**Response to Allegation 8:** **Violation of Petitioner's**
**Sixth Amendment Rights.**

Petitioner appears to make several specific
allegations of ineffectiveness with this general
allegation. Accordingly, I will attempt to address them
individually. The first allegation appears to involve
my failure to object to the "racially biased jury". At
the time of Mr. Lee's trial I was familiar with the
*Batson* case, its progeny, and the underlying associated
and relevant procedures required for obtaining related
relief and/or preserving the error resulting from the
denial of such relief. In my professional opinion there
were no Batson issues presented in Mr. Lee's trial.
There were several minorities both on the actual jury
and in the panel. Nor were there any instances of the
prosecution inappropriately exercising their strikes.

Secondly, Mr. Lee alleges ineffectiveness because
I failed to object to Officer Martin's testimony and
"never investigated the facts of the case". Many of Mr.

25

Lee's erroneous presumptions regarding this essentially irrelevant issue involve his insisting that the law enforcement officer that actually transports him to the jail and is administratively listed as the "arresting officer" must be the same officer that actually chased him down earlier that night. Based upon my understanding of events Officer Martin's testimony was not false. In any event there is no "legal objection" to allegedly false testimony. Additionally, for strategic reasons it would not have been prudent to make an issue out of something that was in fact accurate and the disputing of which was not essential to our defensive strategy. Our defensive strategy was simply that while Mr. Lee was near the crime scene, he was not involved in the crime and ran only because he is afraid of law enforcement. The strategy was knowingly absurd based upon what I knew the evidence to be but it was Mr. Lee's version and we had no other options because the pretrial plea bargain offer was unacceptable to Mr. Lee and for other strategic reasons Mr. Lee decided not to do an open plea to either the Judge or the Jury.

The in-court identification procedure complained about was neither suggestive nor legally improper. All witnesses complained of simply identified Mr. Lee in court as the man they arrested that night. He was in fact the person that they arrested that night. They did not specifically say that he was the person they saw committing these crimes. Accordingly, for strategic reasons it would not have been prudent to make an issue out of something that was in fact accurate and the disputing of which was not essential to our defensive strategy. Our defensive strategy was simply that while Mr. Lee was near the crime scene, he was not involved in the crime and ran only because he is afraid of law enforcement. The strategy was knowingly absurd based upon what I knew the evidence to be but it was Mr. Lee's version and we had no other options because the pretrial plea bargain offer was unacceptable to Mr. Lee and for other strategic reasons Mr. Lee decided not to do an open plea to either the Judge or the Jury.

Any objection to the improper authentication (if any) of the radio transmission would have been frivolous. Based upon prior conversations with the prosecution, I was legally satisfied that there were no authentication issues. Accordingly, no objection was voiced. Additionally, for strategic reasons it would not have been prudent to make an issue out of something that was in fact accurate and the disputing of which was not essential to our defensive strategy. Our defensive strategy was simply that while Mr. Lee was near the crime scene, he was not involved in the crime and ran only because he is afraid of law enforcement. The strategy was knowingly absurd based upon what I knew the evidence to be but it was Mr. Lee's version and we had no other options because the pretrial plea bargain offer was unacceptable to Mr. Lee and for other strategic reasons Mr. Lee decided not to do an open plea to either the Judge or the Jury.

Because I voiced an appropriate objection to the Court's admittance of the "prosecutor's legal writing pad" I fail to see how any finding of ineffectiveness can be found. I pursued the objection until I received an adverse ruling which is generally all that is required of trial counsel.

I am unaware of any legal requirement to request a mistrial after prosecution witnesses admit that they have lost evidence. Strategically, once the prosecution witnesses admitted that they lost the evidence there was nothing more for me to do other than hope that the jury would draw some favorable inference from the absence. Unfortunately, because there was both testimony and video of Mr. Lee actually wearing the shorts, the jury obviously felt that the evidence that was available regarding Mr. Lee's guilt far overwhelmed any reasonable inferences drawn from the absences.

Finally, Mr. Lee alleges ineffectiveness because two character/punishment witnesses were not called. In response it should be noted that I invariably attempt to prepare a punishment case in all trial cases. Accordingly, on numerous occasions well before trial I

repeatedly asked Mr. Lee for the names and contact
information for any character/punishment witnesses that
he would like called at his trial. Mr. Lee repeatedly
told me that he had none and did not wish a[n]y to be
called. He specifically told me that his mother was
dead and that he was essentially estranged from the
rest of his family. Furthermore, he intimated that he
only "runs around with other crooks". Both he and I
agreed that unless he had some quality
character/punishment witnesses that we would simply
(for strategic purposes) highlight to the jury that he
was all alone in this world and attempt to garner some
sympathy for his chosen life of crime. This approach
can be evidenced on pages 21 - 24 of volume 7 of the
trial transcript.

Adm. R., WR-32,427-05, 192-97, ECF No. 25-13.

The state habeas court clearly found counsel's affidavit

credible, and supported by the record, and entered findings, too

numerous to list here, consistent with the affidavit, which were

adopted by the Texas Court of Criminal Appeals. *Id.* at 301-08,

ECF No. 25-14. Based on those findings, and applying the

*Strickland* standard, and other relevant state and Supreme Court

case law, the state habeas court concluded that counsel

adequately and independently investigated petitioner's case;

fully and adequately prepared for petitioner's trial; fully and

adequately defended petitioner at trial, including making the

proper and necessary objections; made reasonable decisions

regarding the interviewing and calling of witnesses; functioned

as counsel guaranteed by the Sixth Amendment; and provided

effective assistance to petitioner. *Id*. at 310-11. The state
court further concluded that petitioner had failed to demonstrate
a reasonable probability that, but for the alleged acts of
misconduct, the result of his trial would have been different.
*Id*. at 311.

Deferring to the state court's findings, and having
independently reviewed petitioner's claims in conjunction with
the record, the state courts' application of *Strickland* was not
unreasonable. Petitioner's claims are conclusory, with no legal
and/or evidentiary basis, refuted by the record, involve state
evidentiary rulings or other matters of state law, or involve
strategic and tactical decisions made by counsel, all of which
generally do not entitle a state petitioner to federal habeas
relief. *See, e.g., Strickland*, 460 U.S. at 689 (holding strategic
decisions by counsel are virtually unchallengeable and generally
do not provide a basis for postconviction relief on the grounds
of ineffective assistance of counsel); *Johnson v. Cockrell*, 306
F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not
required to make futile motions or objections); *Green v. Johnson*,
160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations
in support of a claim of ineffective assistance of counsel are
insufficient to raise a constitutional issue."); *United States v.*

*Green,* 882 F.2d 999, 1003 (5th Cir.1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (ineffective assistance claims "based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what these witnesses would have testified is too uncertain"). Moreover, even if petitioner could demonstrate defective assistance based on one or more of his claims, in view of the overwhelming evidence of his guilt, he cannot make a showing of *Strickland* prejudice. *Strickland,* 466 U.S. at 694-96.

Petitioner claims that his appellate counsel was ineffective by failing to communicate with him before filing appellant's brief; failing to raise the claims raised in this federal petition; failing to file a motion for a new trial; and failing to file a "motion for destination of records", thereby denying him—

> a meaningful appellate review of the sufficiency of the evidence by not requesting and forwarding a copy of the radio-transmission between Officer Kaare Martin and the

30

City of Fort Worth Police Department dispatch marked as "State's Exhibit No. 1," a "copy of the photos exhibit," a copy of the bank's surveillance security camera recording marked as "State's Exhibit No. 57," and "State's Exhibit No. 32," which was played to the jury.

Supp. Pet 3-4, ECF No. 19.

Appellate counsel responded to the allegations via affidavit as follows:

Mr. Lee suggests my counsel was ineffective because I failed to allege as points of error that:

There was no evidence to support each element of the offense charged;
The trial court gave the jury invalid instructions;

The trial court improperly instructed the jury on the law of parties;
The trial court improperly denied his motion for directed verdict;
The trial prosecutors made improper jury arguments;
The trial prosecutors withheld evidence;
The trial court improperly responded to a request in a jury note without the applicant or his counsel being present; and
Ineffective assistance of trial counsel.

I raised the issues of "no evidence to support the verdicts" and the "trial court improperly denied applicant's motion for directed verdict" on appeal.

Applicant's trial counsel objected to portions of the jury instructions given. The court overruled the objections. It is my belief that the jury instructions given were proper, and would not constitute reversible error.

The applicant claims the prosecutors['] jury arguments were improper because the prosecutors refer

31

to a pair of gloves that were not admitted into
evidence. The gloves referred to were not admitted as
evidence at trial. Pictures of the missing gloves were
admitted at trial. The existence of the gloves was
testified to at trial, as was the fact that the police
could no longer locate the gloves. During closing
arguments, applicant's counsel raised the issue of the
missing gloves. The State responded to the applicant's
arguments, during rebuttal. It is my belief that this
was not improper, and would not constitute reversible
error.

The testimony at trial raised the issue that the
gloves had been misplaced. It was not claimed at trial
that the evidence was being "withheld", nor argued that
if the gloves were to be found that it would benefit
applicant's case in some manner. Applicant had the
opportunity at trial to address the issue of the
missing gloves, and in fact, trial counsel argued in
closing that the fact the gloves were missing was a
further example of the state's lack of evidence to
convict applicant.

Applicant argues that the State violated CODE
CRIM. PRO. ART. 36.27 by responding to jury note one
without the applicant and his counsel being present. I
did not raise that issue because the fact that counsel
and applicant were or were not present is not in the
record. No objection, nor comment of any kind was made
in the record regarding the trial court's response to
jury note one, and whether applicant or his counsel
were, or were not present. Further non-compliance with
Art. 36.27 is not reversible error.

I did not raise the issue of ineffective
assistance of trial counsel because it is my belief,
looking at the record as a whole that applicant was
effectively assisted by counsel throughout his trial.

Adm. R., WR-32,427-05, 162-64, ECF No. 25-13.

The state habeas court entered factual findings consistent

with counsel's affidavit and concluded that counsel exercised
reasonable professional judgment in deciding which issues to
raise on direct appeal. *Id.* at 314. The state court's application
of *Strickland* was not unreasonable. As noted by the court,
appellate counsel is not required to raise every conceivable
argument urged by his client on appeal, regardless of merit.
*Smith v. Robbins,* 528 U.S. 259, 287-88 (2000). It is counsel's
duty to choose among potential issues, according to his judgment
as to their merits and the tactical approach taken. *Jones v.
Barnes,* 463 U.S. 745, 749 (1983). Petitioner fails to raise any
meritorious claims in this petition. Prejudice does not result
from appellate counsel's failure to assert meritless claims or
arguments. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th
Cir. 1994). Thus, it follows that counsel was not ineffective for
failing to raise one or more of Petitioner's claims on appeal.

    In summary, the record supports the state courts' denial of
the claims presented in this federal habeas proceeding. The state
courts' adjudication of the claims is not contrary to or involve
an unreasonable application of clearly established federal law,
as determined by the Supreme Court, in light of the record as a
whole. Accordingly, it is entitled to deference and the
presumption of correctness.

For the reasons discussed herein,

The court ORDERS that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as Petitioner has not made a substantial showing of the denial of a constitutional right. Finally, the court ORDERS that all motions not previously ruled upon be, and are hereby, denied.

SIGNED July 2 7 , 2016.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE